

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 1:19-CR-334 |
| JIANXING CHEN, | Hon. Leonie M. Brinkema |
| Defendant. | |

## STATEMENT OF FACTS

The United States and the Defendant, JIANXING CHEN (hereafter "JIANXING"), stipulate that the allegations in Count 3 of the superseding indictment and the following facts are true and correct, and that had the matter gone to trial, the United States would have proven the following facts beyond a reasonable doubt:

1. From in and around at least 2014 and continuing through in and around 2020, within the Eastern District of Virginia, and elsewhere, the defendant JIANXING, did knowingly and intentionally combine, conspire, confederate, and agree with others, both known and unknown, to commit an offense against the United States, in violation 18 U.S.C. § 1956, to wit: to conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is, conspiracy to distribute cocaine, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the conspiracy, and knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1956(h).

2. JIANXING joined a conspiracy whose membership and leadership, at various times, included Xizhi Li (Li), Jiayu Chen (Jiayu), Qiyun Chen (Q.Chen), Xueyong Wu (Wu), and others. The purpose of this organization was to help foreign drug trafficking organizations (DTOs) gather, launder, and repatriate proceeds derived from unlawful drug trafficking activities in the United States. Those drug trafficking activities primarily involved cocaine.

3. The conspiracy cultivated relationships with DTOs to obtain as many "contracts" as possible to move and launder their United States-based drug proceeds. In exchange, JIANXING and his co-conspirators received a "commission" for conducting these pick-ups and arranging these transactions, which represented a percentage of the involved funds.

4. JIANXING and his co-conspirators used secretive and clandestine means to facilitate the movement of these proceeds within the United States. For example:

   a. JIANXING and his co-conspirators transported or caused others to transport drug proceeds across the United States so that additional money-laundering transactions could be conducted by other individuals several states away from where the proceeds were generated;

   b. Co-conspirators operated or had access to bank accounts in the United States, China, Mexico, and elsewhere. Some of these accounts were operated under the names of fictitious identities. These co-conspirators used these accounts to deposit and conduct financial transactions with drug proceeds. This included transmitting the funds to accounts in China where the money was used to purchase Chinese goods. It also included using the funds to purchase consumer goods in the United States that were ultimately shipped to China for resale. Successful completion of these transactions generated Chinese currency known as

renminbi (RMB). Merchants in Latin America seeking to import goods from China purchased RMB from members of the conspiracy using the local currency of the Latin-American country. These merchants used the RMB they bought from the conspiracy to purchase goods in China and import them into Latin-American countries. Acquisition of the Latin-American currencies, often Mexican pesos, enabled conspirators, like Li, to provide the DTOs with their drug proceeds in the currency used in their home countries which disguised the illegal nature and source of the funds used by the DTOs.

5. JIANXING, Li, Jiayu, Q.Chen, Wu, at least two co-conspirators (UCC-1 and UCC-2), and other members of the conspiracy worked together to arrange the transportation of drug proceeds in the United States. JIANXING directed the activities of Jiayu, UCC-1, and UCC-2.

6. Li owned a casino in Guatemala City, Guatemala. The purpose of this casino was, at least partially, to attract money laundering business from drug traffickers. JIANXING and Wu assisted Li in running and operating this casino. While working at this casino, JIANXING formed relationships with drug traffickers.

7. The conspiracy employed several couriers, including UCC-1 and UCC-2, whose job was to conduct pickups of drug proceeds in the United States owed to foreign DTOs

8. JIANXING provided his couriers with vehicles. These vehicles were modified to include secret compartments in which to store and transport cash derived from the unlawful sale of controlled substances including cocaine.

9. JIANXING directed his couriers to obtain cash in various locations throughout the country and transport it back to New York City so it could be delivered to other members of the conspiracy, including Jiayu.

10. One such courier was UCC-1. Throughout 2016 and 2017, UCC-1 picked up drug proceeds in Virginia Beach, Virginia, located within the Eastern District of Virginia. During this same period, UCC-1 traveled through the Eastern District of Virginia to obtain and transport drug proceeds. UCC-1 undertook these activities at JIANXING's direction.

11. UCC-1 maintained a ledger detailing many of the trips. Based on UCC-1's recollection and the ledger, the amount of money transported by UCC-1, largely through the Eastern District of Virginia, was, at least $4,000,000. UCC-1 made more than three trips in each calendar year and transported more than $100,000 each calendar year.

12. In April 2017, JIANXING arranged for Jiayu to receive United States Currency generated by the illegal sale of cocaine from an individual hereafter described as Individual-1. On April 7, 2017, Individual-1 was arrested while transporting approximately $424,000 of cocaine proceeds. At the time of his arrest, Individual-1 was delivering this cash to Jiayu in Brooklyn, New York, so it could be laundered on behalf of a drug trafficking organization.

13. On May 22, 2017, UCC-1 was arrested in Staten Island, New York, while transporting approximately $240,000 of cocaine proceeds in a 2015 Cadillac Escalade. UCC-1 retrieved the proceeds in Chicago, Illinois, and concealed them in a secret compartment in the vehicle. UCC-1 was delivering these proceeds to Jiayu in Brooklyn, New York, so they could be laundered on behalf of a DTO. All these activities were organized and directed by JIANXING. ·

14. On May 23, 2017, Jiayu possessed a ledger detailing cash transactions of at least $2,800,000 at his apartment in Brooklyn, New York. The cash transactions detailed in the ledger all related to money generated by the unlawful sale of controlled substances that he received at JIANXING's direction.

15. The acts described above were done willfully and knowingly and with the specific intent to violate the law, and not by accident, mistake, inadvertence, or other innocent reason. This statement of fact does not contain every fact known to the defendant and to the United States, and it is not intended to be a full enumeration of all the facts surrounding the defendant's charges.

16. The defendant waives any rights that the defendant may have under Fed. R. Civ. P. 11(f), Fed. R. Evid. 410, the United States Constitution, and any federal statute or rule in objecting to the admissibility of the Statement of Facts in any proceeding.

Respectfully submitted,

Jessica D. Aber
United States Attorney

Date: 5/23/2023       By: _____
David A. Peters
Rachael C. Tucker
Assistant United States Attorneys
Eastern District of Virginia
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Tel.: (703)-299-3700


Brent Wible
Chief, Money Laundering and Asset Recovery
Section, U.S. Department of Justice, Criminal
Division

_____
Mary Daly
Deputy Chief, Money Laundering and Forfeiture Unit

Defendant's Stipulation and Signature

After consulting with my attorney, I hereby stipulate that the above Statement of Facts is true and accurate, and that if the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

Date: 5/19/23  _____
Jianxing Chen,
Defendant

Defense Counsel's Signature

I am the attorney for Defendant in this case, Jianxing Chen. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is informed and voluntary.

Date: 5/19/23  _____
Ryan Campbell,
Counsel for Defendant